## McCHERRY v. SNARE & TRIEST CO. et al.

(Supreme Court, Appellate Division, Second Department. January 15, 1909.)

1. APPEAL AND ERROR (§ 1004*)—FINDINGS—CONCLUSIVENESS.

The amount of the verdict in a personal injury action is for the jury and the trial court, and the court on appeal will not interfere merely because the verdict, after reduction by the trial court, seems large for the injuries disclosed by the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3945, 3947; Dec. Dig. § 1004.*]

2. APPEAL AND ERROR (§ 1058*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Sustaining objections to questions on cross-examination which only call for a repetition of testimony already given is not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195–4206; Dec. Dig. § 1058.*]

3. WITNESSES (§ 37*)—COMPETENCY—KNOWLEDGE OF FACTS.

On the issue whether a company performed work on the terminal of a bridge during a stated period, a civil engineer in the department of bridges in the city, in charge of the plans for the work, may testify that the company worked on the terminal during the period, though he did not know whether the men working there were employed by the company.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 80; Dec. Dig § 37.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF REQUESTS.

The court is not bound to charge every request of a party abstractly stating the law; and where the charge, taken as a whole, clearly shows the respective rights and duties of the parties, it is not error to refuse to charge the substance in another form.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

5. CARRIERS (§ 321*)—PASSENGERS—ACTIONS—INSTRUCTIONS.

Where, in an action for injuries to a passenger in a collision between the car and a girder brought into place by a contractor for a public work, the court submitted to the jury the question whether the carrier did or omitted to do anything at the time of the accident that a man exercising a high degree of care under the circumstances should not have done or omitted, and charged that the carrier was only required to exercise a high degree of care in the conduct of its business for the benefit of its passengers, and that it was for the jury to determine what constituted the proper degree of care under the circumstances, and that the jury should consider the fact that the foreman of the contractor had given no notice that he intended to do anything that would obstruct the railroad track, in determining whether the carrier should have had a flagman there, the refusal to charge that the carrier was not obliged to have a flagman there was not erroneous.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1326, 1327; Dec. Dig. § 321.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. CARRIERS (§ 295*)—CARRIAGE OF PASSENGERS—CARE REQUIRED.—
  In the absence of a statute or municipal ordinance, the law does not
  compel a carrier to have a flagman at a particular point; but, in de-
  termining negligence, the failure to provide a flagman may be considered.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1191; Dec. Dig.
  § 295.*]

    Gaynor, J., dissenting in part.

Appeal from Trial Term, Kings County.

Action by Mary McCherry, by Thomas McCherry, her guardian ad
litem, against the Snare & Triest Company and another. From a
judgment for plaintiff, and from an order denying motions for a new
trial, defendants appeal. Affirmed.

Argued before WOODWARD, GAYNOR, RICH, and MIL-
LER, JJ.

Lynn W. Thompson, for appellant Snare & Triest Co.
D. A. Marsh, for appellant Brooklyn Heights R. Co.
Reno R. Billington (J. Elmer Melick, on the brief), for respondent.

WOODWARD, J. While the plaintiff was a passenger upon one
of the trains of the defendant the Brooklyn Heights Railroad Com-
pany, on the morning of December 20, 1905, she was injured by broken
glass cutting her about the head and neck. This broken glass came
from the windows of the car in which she was sitting, as the result
of a collision with a large beam or girder which was being brought
into place by a contractor for the purpose of making changes in the
platform at the Manhattan end of the Brooklyn Bridge. The plain-
tiff secured a verdict for $3,000, which the learned court at the trial
reduced to $1,500 by agreement with the plaintiff; and from the judg-
ment entered upon this verdict, and from the order denying motions
for a new trial upon the minutes, the defendants bring separate ap-
peals.

There is little question that the evidence is sufficient to sustain the
judgment, and while the amount of the verdict, after the reduction,
seems rather large for the injuries which the record discloses, this
was a question for the jury and the trial court, and we are not dis-
posed to interpose our judgment for that of the triers of fact, as modi-
fied by the court. The Snare & Triest Company, which was alleged
to be engaged in the work of constructing the addition to the plat-
form, and which concededly was the original contractor for this work,
insists that the evidence failed to establish that Fay, the foreman of
the work, was in its employ. It is claimed that the Snare & Triest
Company merely took the contract and turned it over to the Metro-
politan Bridge & Construction Company, under a general contract
with that company to do all of this kind of work for which the Snare
& Triest Company should secure contracts. Fay was called as a wit-
ness by the plaintiff, and when first examined testified that he was at
work for the Metropolitan Bridge & Construction Company at the
time of the accident. His attention was then called to testimony given
by him, in an action brought by himself against the Brooklyn Heights
Railroad Company, to the effect that at the time of the accident he

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was working for the Snare & Triest Company, and he then said that that testimony was true, that he had been in the employ of the Snare & Triest Company about nine years, and that he was told by the attorney of said company to say that he was in the employ of the said Metropolitan Company. We think that a man who has worked nine years for a company may be permitted to testify who his employer is. The contract between the said two companies purports to have been made May 1, 1904, but it was acknowledged November 17, 1906 (the accident occurred in December, 1905), and the witness who was produced by the said defendant to swear to said contract did not know when it was made. He was the secretary and treasurer of one company and the vice president of the other.

Without further analysis of the testimony, we are of the opinion that there was evidence that justified the jury in believing that the Snare & Triest Company was in fact doing the work which resulted in the plaintiff's injury. The exceptions to the rulings of the court sustaining objections to questions put to Fay on cross-examination do not present ground for reversal. At most the questions only called for a repetition of testimony already given. The witness had already sworn how he had received his pay; that is, by pay envelopes having the word "Metropolitan" on them. One of these envelopes was afterwards received in evidence.

But it is urged that the court erred in admitting evidence over the objection and exception of the defendant in reference to this issue. One George R. Ferguson was sworn as a witness in behalf of the defendant Snare & Triest Company, and testified without objection that he was a civil engineer in the department of bridges, city of New York, and that he had charge "of the drawing of the plans under which the Snare & Triest Company were to modify or change some portion of the island platform on the New York terminal of the Brooklyn Bridge in 1905. I have that plan with me." The plan was offered and received in evidence. After further explanations of the plans the witness was asked:

"On or about the 20th of December, 1905, do you know whereabouts in this terminal, upon this island platform, the defendant the Snare & Triest Company were at work?"

Counsel for Snare & Triest Company objected on the ground that the "contention is that the Snare & Triest Company were not performing any work at that time. . I object to it upon the ground that it·is incompetent; that this witness is not qualified to testify that the Snare & Triest Company were performing any work on that terminal at that particular time." The court said, "Ask him," and defendant took an exception.

It is to be observed in this connection that the question was one as to the witness' knowledge, and was one to be answered by "Yes" or "No." The question was whether he knew where the defendants were at work on this terminal, and if he did know that the Snare & Triest Company was at work there he was competent to say so, as he was equally competent to say that he did not know. His answer shows that he was competent to answer the question asked, for he says:

"On or about the 20th of December, 1905, I don't know whereabouts in this terminal upon this island platform the defendant Snare & Triest Company were at work. I do not know as to any work being done on that island platform at that time. The work was done some time between July, 1905, and January—the latter part of January—1906. The exact spot that they were working on any particular part of the work I could not state."

It is evident that there was no error up to this point. The witness was then asked:

"Were they working upon the terminal represented by this map during that period?
"Mr. Thompson: I object to that."

The question was then supplemented:

"If you know, the Snare & Triest Company?
"Mr. Thompson: I object to it upon the ground that the witness is not qualified to testify of his own personal knowledge."

The objection was overruled, and an exception taken, and the witness testified that:

"The Snare & Triest Company were working on that terminal as represented by that map between July, 1905, and the latter part of January, 1906."

On cross-examination Mr. Thompson brought out that the Snare & Triest Company had the general contract for this work, and the witness said:

"I don't know of my own personal knowledge whether or not the men who were working on this particular work were employed by them or not."

At this point defendant's counsel moved "to strike out the testimony of this witness that the Snare & Triest Company were performing work upon this terminal at this time upon the ground—" and the court interrupted and denied the motion, to which an exception was taken. The witness had testified, in answer to questions which were predicated upon his knowledge, that the defendant Snare & Triest Company, had worked on that terminal during certain periods, or between certain times, and the fact that he could not say of his own knowledge that "the men who were working on this particular work were employed by them or not" did not disqualify him to testify as to the matters which were within his own knowledge and as to which he had offered his testimony. The negligence complained of was that of Fay, who appears to have been the foreman in charge of this work for the Snare & Triest Company, and whether this witness knew the individual relations of the men generally who were working under Fay's direction had nothing to do with the case, or, at least, it had nothing to do with the questions which the witness had answered as being within his own knowledge. The Snare & Triest Company may have been doing the work, in the sense that they were responsible for it under the direction of their own foreman, though the men who did the work were actually in the employ of some one else; and a lack of knowledge upon this point did not tend to show that the witness did not know the things he had been testifying to as of his own knowledge. It was not error, therefore, for the court to refuse to strike out the testimony.

We have examined the further exception to the court's ruling upon an objection to a question by defendant's counsel, but do not find reversible error. The witness had been over the matter before, and it was not necessary or proper to further complicate the issue.

It is urged on the part of the railroad company that the court erred in refusing to charge the jury that there was no obligation on the part of the railroad company to have a flagman on the structure. The rule is well established that the court is not bound to charge every request of a party, even though the request abstractly states the law. If the charge, taken as a whole, makes it clear to the jury what the respective rights and duties of the parties are, it is not error to refuse to charge the substance in another form. In this case the court, in setting out the claims of the parties, stated that the plaintiff claimed negligence on the part of the railroad company, in that the motorman had failed to notice the raising of the girder and its dangerous proximity to the train, and to take the proper precautions in approaching and passing the point of danger, and also:

"I understand her to say that the negligence of the railroad company consisted, also, in its failure to have a flagman there at that moment."

After warning the jury that they must not speculate upon negligence, but that the plaintiff was bound to establish it, the court said:

"Did the defendant the Brooklyn Heights Railroad Company do anything at the time of that accident that a man exercising a high degree of care under those circumstances should not have done; or did it omit to do something which a man exercising a high degree of care under those circumstances should have done? That is the whole question."

This clearly left it for the jury to take into consideration all of the facts and circumstances, and to determine whether the defendant had discharged its duty. With the main charge standing without exception as above quoted, counsel for the railroad company asked the court to charge the jury:

"That there was no duty on the defendant the Brooklyn Heights Railroad Company to have a flagman at any place on the bridge, as far as the evidence in this case goes."

To this the court replied:

"There is no duty on the defendant the Brooklyn Heights Railroad Company to do anything except exercise a high degree of care in the conduct of their business for the benefit of their passengers. It is for the jury to say what constitutes the high degree of care that should have been exercised at that particular place and at that particular moment and under those circumstances."

There was no exception taken to this modification of the defendant's request, and then counsel made a request to charge:

"That in view of the statement of Fay that no notice had been given that he intended to do anything that would in any way obstruct the use of the railroad company cars, it was not our duty to have any flagman there, out where they said a flagman sometimes was."

To this the court responded:

"I charge the jury that it is their duty to take that fact into consideration, when they come to determine whether a flagman, or any other man or men, should have been there."

The court had not only correctly charged the law in the first instance, but it had charged a modification of counsel's request without an exception, and the portion referred to in the objection merely stated that it was the duty of the jury to take into consideration the statement of Fay in determining the question of defendant's negligence. The defendant was not entitled to a charge that it owed no duty to have a flagman. It was the province of the jury, not to determine whether it was or was not the duty of the defendant to have a flagman at any particular place, but whether, under all the circumstances, including the presence or absence of a flagman, the defendant had discharged the duty of exercising that high degree of care which it is called upon to exercise in the case of a passenger. If there was no flagman present, and if the defendant exercised a high degree of care in operating its train, then the fact that the flagman was not there was of no consequence. If, on the other hand, the train was not operated with a high degree of care, the jury might properly conclude, under the circumstances, that the presence of a flagman was necessary to the exercise of the proper degree of care. In other words, the law does not compel the railroad to have a flagman at any point, in the absence of statutory requirements or ordinances of municipalities; but always, in determining the question of negligence in the operation of trains at dangerous points, it is important to know, in connection with other facts, whether the railroad company had a flagman there, and this the court clearly indicated to the jury. It was not error, therefore, to refuse to charge the defendant's request.

The judgment and order appealed from should be affirmed.

GAYNOR, J. While the plaintiff was crossing the Brooklyn Bridge in one of the defendant company's cars on December 25, 1905, it ran into an iron girder which was being hoisted close to the track. The girder was being put in place as part of a contract of the other defendant, the Snare & Triest Company, with the city of New York, to construct a platform at the Manhattan terminal of the bridge. The said defendant, the Snare & Triest Company, claimed that it had sublet the iron construction work of the contract to another corporation, the Metropolitan Bridge & Construction Company, and that it was doing the work when the accident happened.

The only evidence the plaintiff produced to show that the work was being done by the appellant, the Snare & Triest Company, was the testimony of the foreman who was in charge of hoisting the girder and upon whose negligence the plaintiff relied, and a city engineer. The foreman answered the question of the plaintiff's counsel, whom he worked for, that he worked for the said Metropolitan company; but being shown his testimony in an action by him against the defendant railroad company that he worked for the Snare & Triest Company, said: "I testified to the truth at that time; it is all one;" meaning, as the context shows, his conclusion that the two companies were "all one." He then said:

"Well, I was in the employ of the Metropolitan Company, this gentleman here, this attorney for the Snare & Triest Company told me to say I was

in the employ of the Metropolitan Company. He told me to say so long before this trial."

On cross-examination he says that he had already told the said attorney that he worked for the Metropolitan company before he told him to say so; that the pay envelopes had the Metropolitan company on them, and then as follows:

"I have heard of the Metropolitan Bridge & Construction Company. I thought I was working for them."

He then identifies one of the pay envelopes received by him of the said Metropolitan company on the work, but when offered in evidence it was excluded, and the ruling excepted to. The following then occurred:

"Q. Were you at the time of the happening of the accident employed by anybody else outside of the Metropolitan Bridge and Construction Company, and your idea of being employed by Snare & Triest Company? A. That is who I was working for.

"The Court: He wants to know if you were employed by anybody else except these two.

"A. Not at that time; no, sir. I was working for the same company, and am yet.

"Q. For the Metropolitan Bridge and Construction Company?

"(Objected to. Objection sustained. Exception.)

"Q. Did you receive any money for the work that you performed, including the day of December 20th, from anybody besides the Metropolitan Bridge and Construction Company?

"Mr. Brennan: Objected to as incompetent, immaterial and irrelevant.

"(Sustained. Exception.)"

It is manifest that these rulings were erroneous, and they were on a crucial point. The pay envelope was afterwards admitted in evidence, but the other errors remain.

The said city engineer was asked by the plaintiff's counsel if he knew "the defendant the Snare & Triest Company were at work" on the terminal during a stated period which included the day of the accident. The objection of the said appellant's counsel being overruled, he answered that it was. Having then testified on cross-examination that he did not know whether the men who were working there were employed by the said appellant, its counsel moved to strike the foregoing evidence out, but the motion was denied. The exceptions to these rulings are good and the errors vital. The witness was thus allowed to testify to the conclusion which the plaintiff was seeking to prove. It is not permissible to allow witnesses to swear to the conclusion which is in dispute, and that they say they "know" of their own knowledge does not make it competent. They can know it only by knowing facts which show it, and all that is competent for them to do is to state such facts. It is for witnesses to state facts from which the court and jury may draw the conclusion, not to swear to the conclusion itself. How could this witness say that a corporation, which is without body and invisible, was there and working? "The abstract idea of a corporation, the legal entity, the impalpable and intangible creation of human thought, is itself a fiction, and has been appropriately described as a figure of speech." People v. North River Sugar Refining Co., 121 N. Y. 621, 24 N. E. 839, 9 L. R. A. 33, 18

Am. St. Rep. 843. The way to prove the fact was (for instance) by proving that some one shown to be an officer, or agent, or workman of the company was there doing the work, but no such course was taken with the witness. The idea was to swear the thing through by sheer force.

This is all there is for the verdict against the said appellant to rest on, and it is nothing. Moreover, the said appellant proved by written contract that it subcontracted the work to the Metropolitan company, and that that company carried out the contract.

The appeal of the other defendant, the railroad company, has been examined, and there is no error in it.

The judgment and order should be reversed in respect of the Snare & Triest Company, and affirmed against the other appellant.

Judgment and order unanimously affirmed, with costs, as to the defendant Brooklyn Heights Railroad Company. All concur.

Judgment and order affirmed as to the defendant Snare & Triest Company, as to which RICH and MILLER, JJ., concur; but GAYNOR, J., reads for reversal.