(147 App. Div. 855.)

### McKENNA v. SNARE & TRIEST CO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. NEGLIGENCE (§§ 134, 135*)—INJURIES—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

   In an action for injuries to plaintiff by the breaking of certain appliances used in subway construction in a city street, evidence *held* to sustain a verdict for plaintiff on the issues of negligence of defendant and plaintiff's freedom from contributory negligence.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267–270, 272, 273, 274–276; Dec. Dig. §§ 134, 135.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EVIDENCE (§ 471*)—OPINION OF WITNESS.

Where plaintiff was injured by the negligence of a foreman in charge of certain subway construction, which defendant claimed was being executed by the M. B. C. Company under a contract with defendant, and that the foreman was a servant of that company and not of defendant, and it appeared that the foreman was paid in envelopes bearing the name of the M. B. C. Company, and that he signed receipts to that company therefor, the foreman should not have been permitted to testify to his opinion that he was working for defendant, but should have been confined to proof of the name of the person who employed him and what position, if any, if he knew, such person held with defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

3. TRIAL (§ 244*)—INSTRUCTIONS—UNDUE PROMINENCE TO PARTICULAR FACTS.

Plaintiff, while in a street, was injured by the breaking of certain appliances used by men engaged in subway construction in the street. Plaintiff claimed these men were in the employ of defendant, which defendant denied, and claimed that they were employés solely of the M. B. C. Company, with which defendant had contracted for the execution of its subway contract. This contract plaintiff claimed was not in good faith, and that the M. B. C. Company was a paper corporation organized by defendant to relieve it from such liabilities. The court instructed that, as a matter of fact, the work to all intents and purposes was being done by defendant through certain instrumentalities and agencies working under its direction and for its benefit, and left it to the jury to find whether or not the men chargeable with negligence were actually working for defendant "in such a sense as would relieve it from responsibility for accidents so caused," etc. *Held*, that the jury was thereby permitted to give too great importance to the question as to whether or not the contract between defendant and the M. B. C. Company was made in good faith, and authorized to find for plaintiff on the theory that the men were employed by both companies, and the instruction was therefore erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

McLaughlin and Miller, JJ., dissenting

Appeal from Trial Term, New York County.

Action by Peter McKenna against the Snare & Triest Company. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and MILLER, JJ.

Hector M. Hitchings, for appellant.
Wm. Edgar Weaver, for respondent.

LAUGHLIN, J. On the 11th day of August, 1908, Delancey street on both sides of its intersection with Eldridge street had been excavated for the construction of the subway loop of the Williamsburg Bridge, and a temporary carriageway had been constructed over the excavation on timbers which also supported a gas main owned by the Consolidated Gas Company. Temporary manholes affording access to the gas main had been made at intervals, and they were inclosed on the surface of the streets by rectangular fences formed by four upright pieces of timber to which two boards were nailed on each of the

four sides. One of these manholes was just easterly of the intersec-. tion of. the said streets, and another was a short distance westerly of said intersection. The plaintiff was in the employ of the Consolidated Gas Company, and it was his duty to inspect the main at these manholes for leaks. A truck hauling a steel girder which was to be used in the subway construction work broke through the temporary carriageway at the intersection of said streets. One Peter Reeves and a gang of men were engaged on the subway construction work in the vicinity and were using, when occasion required it, a hoisting engine and block and pulley owned by the defendant. It is claimed by the plaintiff that these men were in the employ of the defendant, and the defendant contends that they were not in its employ, but were working for the Metropolitan Bridge & Construction Company, a New Jersey corporation. With a view to removing the obstruction and to moving the girder to a point where it was needed, Reeves directed that the truck be detached from the girder and drawn out, leaving the girder on the surface of the temporary carriageway, and he then directed that it be moved to the westerly of the crossing by the use of the engine block and tackle. With a view to hauling the girder in the direction desired, a snatch block with a pulley over which the rope connecting the drum of the engine and the girder ran was attempted to be secured in place, by the use of an appliance known as a shackle, in the vicinity of the manhole located westerly of the crossing. The power was finally applied, and after the girder had been moved a few feet the shackle spread, letting the bolt which passed through the eyes of the shackle out at one end, and part of the tackle was thrown across the street to the east and came violently in contact with one of the boards inclosing the manhole opening near which the plaintiff was standing or walking, driving it against him, and inflicting injuries to recover for which he brought this action.

The jury were warranted in finding that the shackle spread owing to the fact that the bolt was not secured at all by a nut or otherwise, or that an attempt was made to secure it by screwing a nut on only part way, so that when the strain came the threads of the bolt were stripped letting the nut off.

[1] The evidence was sufficient to require the submission to the jury of the question as to whether the plaintiff was free from contributory negligence, and whether there was negligence on the part of those doing the work, and was sufficient to sustain the verdict of the jury on those issues. The defendant, however, denied liability for the acts from which the plaintiff suffered the injury and contended that the men doing the work were not in its employ, and that became a vital issue on the trial.

[2] The plaintiff called as a witness said Reeves, who testified that on the day of the accident he was working in Delancey street on the subway between the Brooklyn and Williamsburg Bridges. He was then asked, "In whose employ were you?" This was objected to by counsel for the defendant on the ground that it was incompetent, immaterial, and called for a conclusion of the witness, and that the question was one for the jury to determine. The objection was over-

ruled and an exception duly taken. Reeves answered that he was in the employ of the defendant, and that his position was that of foreman of steel erection; and under like objection and exception he was permitted to testify that he had worked for the defendant about four or five years in the capacity of foreman, and was foreman of this work at the time of the accident. He further testified that the work of moving the girder was being done by a gang of men under him and pursuant to his orders. It appeared that this foreman and the gang of men employed under him received their pay in envelopes upon which was printed "Metropolitan Bridge & Construction Company," and that they signed receipts for their pay as having been received from said company. A letter produced by Reeves, signed in the name of the defendant, by W. G. Triest, as vice president, under date of May 11, 1909, addressed "To Whom It May Concern," introduced in evidence over defendant's objection and exception, certifies that Reeves "has been in our employ for about four years as foreman of erection," and in other respects it was a letter of recommendation. W. G. Triest, who signed the letter, was called as a witness, and he testified that the defendant never employed Reeves, and that he stated that Reeves had been in defendant's employ through inadvertence. Several of the men engaged on this work were called by the defendant and testified that they were in the employ of the Metropolitan Bridge & Construction Company at the time of the accident, and, among others, the head paymaster and timekeeper, who testified to the manner in which the employés were paid, and in which receipts from the employés were taken and preserved by him, that the money which he received to give out, and which he did give out, was in envelopes of the Metropolitan Bridge & Construction Company, and that he never paid out any money in the name of the defendant. An agreement in writing bearing date the 1st day of May, 1904, and duly acknowledged on the 17th day of November, 1906, between the defendant, a domestic corporation, party of the first part, and the Metropolitan Bridge & Construction Company, a corporation organized under the laws of the state of New Jersey, as party of the second part, was introduced and read in evidence on the part of the defendant. By this agreement the party of the second part agreed—

"to accept, enter upon, do and perform all necessary work, labor and service for the erection, construction and completion of the constructive part of each and every contract hereafter obtained by the party of the first part for masonry, iron, steel, composite or construction work of any kind or nature, and to perform such construction or erection work in a good and workmanlike manner, to the satisfaction of the party of the first part, or of any architect specified in the first party's contract, in strict accordance with the plans, specifications and details of said work, in accordance with all legal requirements and with the requirements of the various departments, municipal bodies, architects, engineers or such person or persons as may be in charge of and superintending the said work on the part of the person, persons or corporations contracting with said party of the first part, and in the prosecution of this agreement to supply all needful foremen, superintendents and workmen of adequate skill and ability and to accept and receive from said first party and be responsible for all material necessary for said construction or erection."

The party of the first part, being the defendant herein, obligated itself, upon obtaining any contract for work of the description in that part of the contract already quoted, to—

"turn over the constructive or erective part of said contract to the party of the second part, and to pay the said party of the second part for the said erective or constructive work, as the same progresses, the actual cost to said second party of the said work, labor and services (except services and labor of superintendents), said cost to be arrived at by taking the aggregate weekly pay rolls of the party of the second part and liquidating the same in weekly payments, and that in addition thereto the said party of the first part agrees to furnish and loan to said second party all necessary tools, tackle, derricks, ropes, ladders, scaffolding or appliances necessary for such erection or construction, and to pay to the party of the second part on the first day of each month hereafter the further and additional sum of 5 per cent. upon the total pay rolls herein excepting amounts paid for superintendents and paid during the preceding month, it being understood and agreed that said 5 per cent. is to be received by the party of the second part in full compensation for its services in the said work."

It was further agreed that the party of the second part, being the Metropolitan Bridge & Construction Company, was to hire and pay all employés on the work and the salaries of the necessary superintendents, and to immediately pay and discharge any mechanics' liens filed against the work; and that the party of the first part, being the defendant herein, should furnish all materials and deliver the same to the party of the second part; and that the contract should continue for five years, but might be sooner terminated by either party on two weeks' notice in writing. The defendant also proved a formal notice in writing given by it to the Metropolitan Bridge & Construction Company under said agreement submitting plans, specifications, details, and drawings for the steel for its contract for this subway work, and calling upon the Metropolitan Bridge & Construction Company to do the work pursuant to said agreement, and the acknowledgment in writing from the Metropolitan Bridge & Construction Company of the receipt of said notification containing a promise on its part to proceed with the work. The secretary of the Metropolitan Bridge & Construction Company had formerly been a stenographer in the defendant's employ, and the only office the Metropolitan Bridge & Construction Company had was desk room in the office of the defendant. Triest testified that neither he nor the defendant had anything to do with the incorporation of the Metropolitan Bridge & Construction Company so far as he knew; but he was subsequently asked whether it was not a fact that the Metropolitan Bridge & Construction Company "was organized and fostered and got together by Snare & Triest Company," and after an objection that the question was incompetent, irrelevant, and immaterial had been overruled, and an exception taken, the witness declined to answer. Reeves, on being recalled, testified that Triest visited the work sometimes once a week and sometimes once in two weeks, and at times made inquiries and gave directions with respect thereto, and that in May, 1909, he was notified that he would be laid off work

by one Holstein, a superintendent under whom he was working, and he went directly to Triest's office and said to him:

"I understand from your superintendent, Mr. Holstein, that I am to be laid off, and I came to see if you would give me a recommendation."

Whereupon he says Triest dictated and subsequently signed the letter the material part of which has been stated.

The Appellate Division in the Second Department, in McCherry v. Snare & Triest, 130 App. Div. 241, 114 N. Y. Supp. 674, affirmed without opinion 198 N. Y. 532, 92 N. E. 1090, by a divided court held, on facts somewhat different from those now before the court with respect to the same or a like contract between defendant and the Metropolitan Bridge & Construction Company, that the question of which of the companies was doing the work was one of fact for the jury. Very likely that was also a question of fact in the case at bar; but it cannot be said that the contention of the defendant that it was not doing the work was made in bad faith, or that its claim was without merit. We are of opinion that the learned trial court erred in permitting the witness Reeves to testify that he was employed by defendant. The defendant being a corporation, he should have been permitted to state only the name of the individual who employed him and what position, if any, if he knew, such person held with defendant. It appearing that he was paid and receipted for his pay in the name of the Metropolitan Company, his opinion that he was working for the defendant was not competent evidence for the consideration of the jury in deciding the question of fact as to who was his employer and responsible for his acts.

The court instructed the jury that, if the men engaged in this work were not in the employ of the defendant, would end the case, and that the defendant was not responsible for the negligence of the employés of another. The attention of the jury was then drawn to the testimony of Reeves, the foreman, and to these contracts, and the court said:

"Now, of course this contract of itself does not determine; that is a mere bit of paper, probably at the time of the accident reposing in the pigeon hole at somebody's safe down town. We are more interested in what actually took place on the job. Reeves says that he and the men moving the beam were in the employ of the defendant. There is testimony on the other side that you will recall, the time slips and the pay slips, and other evidence, to show, in the light of the testimony of the witnesses called by the defendant, that these men were being paid by the Metropolitan Bridge & Construction Company. This agreement, you will note, is an unusual agreement. Now, it is true that a corporation like Snare & Triest Company may, if they take a contract to dig this tunnel in Delancey street or any other construction work, make a bona fide subcontract with some other person to do any part of the work, and, in case the employés of that subcontractor cause injury to another, the general contractor is not responsible. In other words, a general contractor may relieve himself of responsibility by making a contract with some independent contractor who undertakes to do a certain part of the work. And if the men that subcontractor employs cause injury to some passer-by or some member of the public the general contractor is not responsible; the subcontractor himself is responsible. Now, that is well recognized in law; but, in order that that principle of law may apply, it must be a bona fide

contractor; and the contention of the defendant (sic) here is that there was no such bona fide subcontract let. As a matter of fact, the work, to all intents and purposes, was being done by Snare & Triest Company, through certain instrumentalities and agencies working under their direction and for their benefit. Now, this is evidence that you may consider in connection with all the evidence in the case, the testimony as to what actually took place on the job, who paid the men, who directed the men so far as appears in the testimony, and say whether or not these men were actually, from a common sense point of view, actually working for Snare & Triest Company, instead of for the Metropolitan Bridge & Construction Company, in such a sense as would relieve the Snare & Triest Company from responsibility for accidents caused by the men working upon the job. Of course, if you find that the Metropolitan Bridge & Construction Company was doing that work, that Reeves worked for it, and that these other men worked for it and not for the Snare & Triest Company at all, that there existed here a bona fide independent subcontract under which this work was being done, why, of course, then your verdict will be for the defendant, because this defendant can be liable only in case you find that these men were in its employ to all intents and purposes. If you find, on the other hand, that they were actually and as a matter of fact in the employ of Snare & Triest Company, then you come to the question of damages."

At the close of the charge the defendant duly excepted to the instruction of the court to the effect that Reeves was in charge of the work of moving the girder, whereupon the court remarked:

"I did not mean to say that he was. I merely meant to call the jury's attention to the fact that he swore he was. The credibility of the witnesses is for the jury."

Counsel for the defendant excepted to this modification, and also to that part of the charge wherein the court referred to the contract as a mere piece of paper, and requested the court to instruct the jury that the contract expressed the contractual relations between the parties, to which the court replied:

"So charged. When I say it is a piece of paper, I mean, of course, merely that that is all any contract is; that is the expression of the contract in writing; that the actual manner in which the work was done supersedes the written language of the paper."

Counsel for the defendant excepted to this modification, and also to the charge "that the contract is a peculiar contract," to which the court said:

"I didn't mean that it is a peculiar contract; it is an unusual contract. I ask the jury particularly to read the contract, to take it with them into the jury room and read it over very carefully."

Counsel for the defendant also excepted to the charge that it was for the jury to determine whether the Metropolitan Bridge & Construction Company was doing the work through the instrumentality of the defendant or its agents, and thereupon specifically called the court's attention to the part of the charge to which his exception was directed by saying that it related to that part of the charge wherein the court left it to the jury to determine, in connection with the bona fides of the contract and of the corporation, whether the Metropolitan Bridge & Construction Company was not "working through the instrumentality of Snare & Triest Company, and not for themselves." Counsel in taking this exception was in error with respect to what

the court had said to the jury, for in the part of the charge to which the exception relates the court had submitted it to the jury to determine, not whether the Metropolitan Bridge & Construction Company was doing the work through the instrumentality of the defendant, but whether the defendant was doing it through the instrumentality of the Metropolitan Company.

[3] We are of opinion that the jury were permitted under the charge of the learned trial court to give too great importance to the question as to whether or not the contract between the defendant and the Metropolitan Company was made in good faith. The issue to be determined by the jury was, not whether the defendant was instrumental in having the Metropolitan Bridge & Construction Company incorporated, or what its motive or purpose was in subletting part of the work to that company, or whether the contract between them was made in good faith. The Metropolitan Bridge & Construction Company, in so far as appears by this record, was a duly organized corporation; and it was perfectly competent for the defendant to sublet the whole or part of the work to it. The important question to be determined by the jury was: Whose servants were these men, who were guilty of the acts of negligence which resulted in the injuries to the plaintiff? It was quite immaterial whether the Metropolitan Bridge & Construction Company was organized in good or bad faith, or whether the contract between the defendant and it was made in good or bad faith. It was competent for the Metropolitan Bridge & Construction Company to employ these men to do this work, and if it did employ them, and was paying them for their services, the defendant is not responsible for their acts. As has been seen, the court instructed the jury that:

"As a matter of fact, the work, to all intents and purposes, was being done by Snare & Triest Company, through certain instrumentalities and agencies working under their direction and for their benefit."

And also left it to the jury to find whether or not the men who were guilty of the acts of negligence were actually working for the defendant "in such a sense as would relieve Snare & Triest Company from responsibility for accidents caused by the men working upon the job." Considering the charge as a whole, the jury may very well have found that the men were actually employed by the Metropolitan Bridge & Construction Company, but that the defendant sublet the work with a view to avoiding liability to the employés or for their acts, and that, since the defendant advanced the amount of the pay roll weekly, it should be held responsible for the acts of the men on the theory that they were in a sense in its employ. The men were not in the employ of both companies, and yet the jury under these instructions may well have found for plaintiff on the theory that they were employed by both.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and SCOTT, J., concur.

MILLER, J. (dissenting).  I agree with Mr. Justice LAUGHLIN that the evidence is sufficient to sustain the verdict both as to plaintiff's freedom from negligence and the negligence of those doing the work which caused his injury, but I differ with him as to the other issue in the case.

There is no doubt that in form the workmen were employed and paid by the Metropolitan Bridge & Construction Company, which on paper was an independent contractor.  There was no question for the jury, unless they were at liberty to find that the paper transaction was a mere subterfuge, and that the employés in form of the Metropolitan Company were in fact doing the work of the defendant, under its direction and control.  In that view it was of little consequence that Reeves was allowed to state his conclusion that he was in the defendant's employ, precisely as the defendant's witnesses stated their conclusion.

The plaintiff's evidence in chief was at least sufficient to require an explanation of the defendant, and the case really turns on that explanation, which consisted mainly of a paper defense, i. e., the contract between the defendant and the Metropolitan Company made May 1, 1904, the defendant's letter of May 4, 1908, calling upon the latter to assume charge, pursuant to said contract, of the steel work for the Delancey street subway, the reply of the latter thereto, the latter's pay envelopes, and the receipts to it of the workmen.  The only witness called by the defendant who was in a position to know the facts bearing on the point under discussion was its vice president. It is suggestive that he refused to answer questions on cross-examination relating to the organization of the Metropolitan Company, and that his direct examination was carefully confined to proof of the paper defense and to an explanation of the letter recommending Reeves, written by him in the defendant's name, in which he stated that Reeves had been in its employ for about four years on different jobs named, including the one in question.  The Metropolitan Company and the subcontract with it were evidently such mere paper affairs, matters of form, that, when there was no motive to conceal the truth, their existence was forgotten.  It may be that technically that letter was not evidence against the defendant.  Artificial persons have the advantage over natural ones of being unable to write letters except by agents.  The artificial person has to be kept distinct from the natural person who supplies its brain, and whose admissions are not binding on it unless made within the scope of his authority in the furtherance of the business intrusted to him.  Thus evidence of great probative value may sometimes be excluded by a rigid adherence to technical rules.  However, the letter was admitted without qualification and without objection.  It would later have been admissible anyhow to contradict the writer.  Although his direct examination suggests to me studied care to keep away from the vital point in the case, he did make two significant statements on cross-examination, viz.:

"The Metropolitan Bridge & Construction Company had desk room in our office.  That is all they (sic) had."

"Well, when we were general contractors, we had a superintendent in our employ on the job who was also in charge, who had also to look after the

work of the Metropolitan Bridge & Construction Company, and that man was in our direct employ."

It is to be inferred that the president of the Metropolitan Company, Mr. Howarth, was a superintendent of construction, as the witness Holstein testified that he was an assistant superintendent under Howarth. The defendant's vice president first denied, and then recalled the denial, that Howarth had been in the defendant's employ prior to the organization of the Metropolitan Company. The latter's secretary was the defendant's assistant secretary and at the time of its organization was employed by the defendant as a stenographer in its office. There was some evidence to show that the defendant's vice president exercised personal supervision and direction over the work, and it was not denied that he did.

The defendant, as the record shows, was engaged in very important construction work involving considerable risk of accident claims. It contracted to sublet the "constructive or erective" part of the work on all contracts, which it might obtain, to another corporation, organized by its employés, under conditions which did not require of its subcontractor the possession of a dollar of capital. It is a reasonable inference that the latter had such capital as its business required, i. e., "desk room" in the defendant's office and the said contract. Its 5 per cent. commission was doubtless enough to pay the salaries of its superintendents and officers, also employés of the defendant. It is taxing credulity too much to expect one to believe that in making that contract the defendant had any purpose except to interpose the barrier of another corporation between it and liability to third persons, while in fact retaining control of the execution of its contracts. If that purpose has been achieved, an effective method of insuring against, or to be accurate of evading, such liability has been discovered.

While it would seem that the plaintiff might have elicited, even from the enemy, more direct evidence on the question, such evidence as there is, in connection with said contract, irresistibly leads to the conclusion that, though in form the defendant had sublet the work, it was, to all intents and purposes, doing it itself; that, though on paper there was a subcontractor, in truth and in fact the defendant did its work by the same agencies, in precisely the same way, and with precisely the same control as it would have done it had there been no paper subcontract. The jury have so found, and I do not think we should grant a new trial unless we are prepared to hold that the defendant was entitled to a dismissal of the complaint at the close of the case.

The question then is resolved into one of law: Can a corporation take advantage of its impalpable nature to divest itself of responsibility for, while retaining control of, its undertakings, by the stratagem of a mere paper contract with another invisible creature having the same agents? Of course, the defendant would not have made such a contract unless its own and its nominal contractor's agents were the same. To have actually sublet its work to a mere paper corporation would have involved too great risk of damages for breaches of its contracts. The last statement involves an inference, which I think

justified by the record, but which is not necessary to the point to be decided. The general rule, of course, is that one is not liable to third persons for the acts of an independent contractor; but the test of nonliability is that the employer shall be concerned only in the result of the work, and shall not retain control of the manner and means of doing it. If one in fact employs an independent contractor to do a piece of work, in other words, if he surrenders control of the manner and means of doing it, he is not ordinarily liable to strangers for what his independent contractor does, even though the latter be irresponsible. There is in that case, not an evasion of responsibility, but a devolution of responsibility from one to the other. But if the contractor be independent on paper only, if his employment be a mere subterfuge to enable his employer to evade responsibility, while the latter in fact retains full control of the enterprise, can there be any doubt that the law will go beyond the paper device and fix responsibility upon the one in fact exercising control? The maxim "respondeat superior" is applied to make people answerable for the conduct of their own affairs. Liability is imposed on the one exercising or having the power to exercise selection and control. The principle applies alike to both artificial and natural persons. It is easier of application to the latter, because they can be seen; but certainly the ones having the greater facility are not on that account to have the greater liberty to evade the law.

As has been shown, the defendant did its work by the same visible agencies as it would have used had there been no paper subcontract and no Metropolitan Bridge & Construction Company. The jury were justified in finding that the latter was only nominally employed to enable the defendant to escape liability for accident claims, and that the defendant actually controlled all the visible means used. Has the invisible entity, the creature existing only in contemplation of law, the legal fiction, sufficient substance to screen the defendant from liability? A natural person cannot evade his legal responsibilities by hiding behind another. Surely courts and juries should be able to see beyond an invisible screen. Two or more persons may form a corporation for the very purpose of conducting a business in an organized capacity so as to limit the risk of loss to the capital invested. There is in that case, not an attempt to evade responsibility, but a substitution of corporate for individual liability, which the law allows. The joint capital contributed becomes a trust fund for the protection of the public. Notwithstanding the safeguards imposed by law, that capital may not always be sufficient. But it by no means follows that one corporate organization may be used by another as a device to evade responsibility, that one corporation may be organized to supply the capital and derive the benefits, and another without capital to take the responsibility and risk. I think that, upon the proof in this case, the second invisible entity and the subterfuge of a paper subcontract with it may be disregarded, and that the one for whose benefit and under whose actual control the work was done may be held directly responsible upon the application of the maxim "respondeat superior."

While the discussion did not take quite the same turn, the same

state of facts was involved in McCherry v. Snare & Triest, 130 App. Div. 241, 114 N. Y. Supp. 674, and a judgment against this defendant was unanimously affirmed by the Court of Appeals in 198 N. Y. 532, 92 N. E. 1090.

The judgment and order should be affirmed, with costs.

McLAUGHLIN, J. (dissenting). The Metropolitan Bridge & Construction Company was a duly organized corporation. The ulterior object of its incorporators was not an issue in this action. The purpose for which the corporation was formed is set out in the certificate of incorporation and is not open to collateral attack. It may be assumed that the holders of the stock of the Snare & Triest Company organized the Bridge & Construction Company for the sole purpose of relieving the Triest Company from liability in case of accidents by subletting to it a part or all of contracts taken; but this assumption does not aid the defendant. The statute gave them the right to form a corporation for the purpose of doing the things set out in the certificate of incorporation. Once the corporation was duly formed and was acting within its corporate powers, it is of no consequence what was the ulterior purpose of the incorporators. One of the principal questions litigated was whether the Triest Company had sublet to the Construction Company the performance of the work in which the plaintiff was engaged at the time he was injured. It had, in form; but from the evidence adduced at the trial the jury could find it had not in fact, that the Triest Company had not surrendered control of the work contracted to be done by the Construction Company, and that the Construction Company in what it did acted as the mere agent of the Triest Company. There was, as it seems to me, an abundance of evidence to sustain a finding to this effect. If this be so, then the Triest Company could not escape liability in case of accidents to employés by showing that it had formally entered into a contract with the Construction Company, which, in turn, had formally employed and paid such employés with money furnished by it.

I do not find any errors committed at the trial sufficient to justify a reversal of the judgment.

I concur, therefore, in the conclusion reached by Mr. Justice MILLER that the judgment and order should be affirmed.