LENA HAMILTON, RESPONDENT, v. CITY LIGHT & TRACTION COMPANY, APPELLANT.*

Kansas City Court of Appeals. March 5, 1928.

*Corpus Juris-Cyc. References: Street Railroads, 36Cyc, p. 1505, n. 81; p. 1527, n. 1; p. 1639, n. 16.

*Ernest A. Scholer* and *A. L. Shortridge* for respondent.

*George F. Longan* and *Paul Barnett* for appellant.

WILLIAMS, C.—This is a suit for personal injuries and comes to this court on appeal from the circuit court of Pettis county. The defendant operates street cars in the city of Sedalia. The petition alleged that a part of defendant's street car system consisted of a single track running north and south on Limit street, where it intersects with West Broadway in the city of Sedalia; that said street car line connected the main portion of the traffic system of defendant with the Sedalia fair grounds on the outskirts of the city. It was alleged that Limit street was grown up with grass, trees and shrubbery and that defendant operated street cars over such line only at such times as entertainment attracted people to the said fair grounds;

that West Broadway intersects said track at right angles and is a much used road; that the ground for a distance of several hundred feet, before reaching said street car track rises to the west so that the street car track lies somewhat above a person approaching from the east, and that the road bed and track had been permitted to sink and settle below the general surface of the macadam so that any one approaching from the east could not, in the exercise of the highest degree of care, see or become aware of the presence of a car track, until upon it or within a few feet thereof. It was alleged that for many hundred feet east of the car track corn had been planted on the north side of West Broadway and in said cornfield there were some old orchard trees and that the corn and the trees, together with the trees and shrubbery within Limit street formed an impenetrable screen through which it was impossible to see an approaching street car until one passed to the west edge of the cornfield and was fully within the boundary lines of said Limit street and within a few feet of the street car track. It was alleged that the plaintiff was riding in an automobile driven by her brother, Leon Wilson, that she and her brother were strangers in Sedalia and unfamiliar with the streets and street car systems, that her brother drove West on Broadway, toward said car track and that because of the elevation of the ground to the west and the lowness of the rail and because of the trees and shrubbery and dense cornfield that neither the car track nor the approaching street cars were visible until the motor car was within a few feet of the car track; that at said time one of defendant's street cars approached from the north, suddenly burst into said intersection and squarely in front of the approaching automobile when the automobile was so close that it was impossible to stop. The petition alleged a collision and a consequent injury to the plaintiff.

The petition then alleged that all of plaintiff's injuries were the direct result of the carelessness and negligence of the defendant in that defendant carelessly and negligently maintained and operated a street car crossing one of the frequently traveled streets in the edge of the city limits of Sedalia, when from the very topography of the ground and the character of the track crossing in the macadam road, the very presence of the car track could not be seen or ascertained by a person traveling in a westerly direction until the motor car was upon, or at the very edge of said track, and further that at said time and place by reason of the cornfield, trees, bushes and general vegetation along the east of said track and extending to the very edge of the West Broadway road, an approaching street car could not be seen until a person was beyond the edge of the cornfield and trees, which would bring him to the very edge of the track, and that defendant negligently maintained a car track and operated cars thereover which was a public menace to persons, including plaintiff, driving upon West Broadway, and defendant carelessly and negligently failed and.

neglected to put up signs, carelessly and negligently failed, in view of the conditions above described, to put up any sign or warning indicating to the public, including plaintiff, that there was a used car track immediately ahead, or indicating that a street car was liable to emerge out of said cornfield at any time; that at that time and place defendant carelessly and negligently permitted the watchman who was ordinarily kept and maintained by defendant at said place when the street car was being operated over said track to depart or be absent without replacing him by another, and that said crossing and all of the conditions surrounding same, as above described, were well known to defendant, or in the exercise of reasonable care, should have been known to it.

The defendant's answer consisted: first of a general denial; second, of an allegation of contributory negligence; third, an allegation that if the plaintiff received any injuries the same were further contributed to by the negligence of her brother, who was driving the automobile in which she was riding in this: that he drove the automobile in a westerly direction along Broadway, a public street in the city of Sedalia, toward the intersection of Broadway and Limit avenue, a public street in said city, upon which avenue a street car track and right of way was owned and operated by defendant and a part of the track and the ties thereof and the trolly wires overhead and the posts upon which said trolly wires were suspended were all visible for a great distance, and the plaintiff's brother could and should, by the exercise of ordinary care, have known that he was approaching a street car crossing; that all obstruction to the view at the intersection of Limit avenue and Broadway were set so far back that a person traveling in a westerly direction along Broadway toward said intersection could see the approach of a street car for a great distance; that it was the duty of said brother in operating said automobile to exercise the highest degree of car in approaching said intersection and he negligently failed to exercise such care in that he negligently failed to notice said street car track, ties, trolly wires and poles, and negligently failed to notice the approach of said street car, although it could be seen in ample time to avoid a collision, and he negligently operated his automobile at a high, dangerous and reckless rate of speed and negligently failed to keep his car under control. And it was alleged that plaintiff's injuries were the direct result of the negligent acts of herself and her brother and that said injuries were not the direct result of any negligence upon the part of the defendant.

Plaintiff's reply was a general denial coupled with an allegation that she had no control or management of the car in which she was riding, and could not, to her knowledge, have done or omitted to do anything that would save her from the peril of the situation, and that the driver's negligence, if any, which plaintiff denied, could not be imputed to her.

The evidence shows that the defendant, on the 3rd day of September, 1926, and for some time prior thereto, had maintained a street car track across West Broadway on what is known as Limit avenue, said Broadway running east and west and said street car track running north and south and crossing said Broadway street at what was originally the extreme western limits of Sedalia, and in a practically unimproved part of the town; that on the date in question there was a field of green corn immediately on the north side of Broadway, and the east side of Limit avenue, which corn was about twenty-two feet from the east rail of said street car track, and about five feet north of the north edge of the roadway of said Broadway, said roadway being about fifteen feet wide and located in the center of Broadway, the roadway being of macadam and asphalt, the corn on said date being very thick and luxurious, and in addition to corn there was on the east side of said car track and commencing near the north line of the paved roadway of said Broadway a row of trees, bushes and other growth, all of which completely obstructed said street car track from the view of a person traveling west on Broadway and approaching said track; that the ground on which said roadway was located inclined upward from east toward the track, and that the rails which crossed the roadway were slightly below the surface of said roadway, and that the space between the paved roadway and the north and south side of said Broadway was grown in weeds and grass so that the entire track in crossing Broadway was invisible to a person approaching same from the east or west sides.

Photographs of the condition taken within a few days after the accident were exhibited to the jury and are now before this court.

Limit avenue, running north from Broadway, and on which said street car track was located, was not an open street and was not improved, although there was a narrow driveway on the east side of the street car track and on what would have been Limit avenue, running south from Broadway, so that the electric car in question practically came out of a cornfield immediately adjoining Broadway on the north; that said street car track extended from the business district of Sedalia to the State Fair grounds located in the country southwest of Sedalia, about two miles from said business district, and that said track was only used during the State Fair or when some meeting was in progress at the State Fair Grounds; that what is known as Farmers' Week was in progress at the Fair Grounds at the date in question, and that said "Farmers' Week" immediately followed "Fair Week;" the admission of defendant's attorney in the opening statement that this track was used only to reach the fair grounds and was used only at times when persons would be going to the fair grounds; that there was no sign or other indication that a car track crossed Broadway at said place, and no watchman at the time of the accident was stationed at said crossing to warn travelers

on Broadway; that the week before, which was Fair Week, and during previous Fair Weeks, the defendant had maintained a watchman at said crossing the entire day and every day during Fair Week.

That on the 3rd day of September, 1926, during the week immediately following Fair Week and while said Farmers' Convention was in session at the Fair Ground, the plaintiff was riding with her brother and two small boys in a Dodge coupe owned and driven by her brother. This automobile was traveling west on said Broadway; that neither plaintiff nor her brother nor children had even been over said part of said Broadway before and had never before crossed said street car track and did not know of the existence of a street car track until so close that when the street car appeared out of the cornfield it was impossible for plaintiff's brother to stop his automobile; that at the time the automobile was proceeding at the rate of twenty or twenty-five miles per hour; that the driver of said automobile attempted to stop his car and turned immediately to the north in trying to avoid the street car, but a collision occurred in which plaintiff received severe injuries, the extent of said injuries and the amount of the verdict not being questioned by appellant; that immediately before said street car appeared plaintiff had looked ahead on Broadway to a distance beyond where said track was located and observed that Broadway was clear and no cars were in sight thereon at that time, and that as soon as the street car emerged from the cornfield she shouted, "There is a street car." The road being clear before the street car appeared, plaintiff's attention had been called to the appearance of a bungalow located on the south side of Broadway but across the street car track in the direction which plaintiff was traveling, and in the direction which plaintiff was looking for traffic on Broadway.

While defendant's answer pleads that "The street car had a bell which was rung by the operator of the street car upon the approach of Broadway," and that plaintiff or her brother who was driving the automobile, failed to observe said signal and failed to listen for any such signal. Plaintiff's evidence shows that none of the occupants of the automobile heard any bell or signal and that two of plaintiff's witnesses who lived in houses on the north and south sides of Broadway immediately west of the street car track did not hear any bell or signal, but did hear the crash when the collision occurred. There was no evidence offered by defendant.

The main instruction upon which the case was submitted is as follows:

"The court instructs the jury that if you find and believe from the evidence that at the time and place in question at the intersection of Limit street and West Broadway street in Sedalia, Missouri, the said Limit street north of Broadway was not used for general traffic purposes and was grown up with grass and weeds, and that the ground

immediately east of Limit street and abutting on Broadway was occupied by a dense crop of field corn, and if you further find that the tracks of defendant crossing the surface of West Broadway, had been permitted to sink into the road surface and were somewhat below the level of its surface, and that the grade of West Broadway toward Limit street was upgrade, and that by reason of the sinking of the tracks into the road surface, and the upgrade of West Broadway, that said car track was not visible to persons, including plaintiff, traveling westward upon Broadway, until they were upon said track, or within a few feet thereof, and if you further find that by reason of the cornfield above mentioned the actual approach of a southbound street car was concealed, so that strangers to the road, including the plaintiff, could not in the exercise of the highest degree of care, become aware of the near approach of a street car until they were within close proximity to the track, and if you further find that the above-mentioned conditions, if you find such conditions existed, or a combination of the same, more than ordinarily endangered the reasonable safety of persons, including plaintiff, traveling upon said West Broadway, then it was the duty of the defendant, street car company, to exercise reasonable care to put up a sign or warning to warn traffic, including plaintiff, of the presence of the track and approach of its cars, and failure so to do is negligence.

"If, therefore, you find and believe from the evidence that on September 3, 1926, the above-mentioned conditions existed and were more than the ordinary menace to plaintiff traveling upon the road, and that defendant operated its street car into and across said intersection without taking reasonable care to put up along West Broadway a sign or warning to the traveling public, including plaintiff, of the presence of its track and that a street car was liable to run thereon, and that as a direct result of such failure to put up a sign or warning, if you find there was a failure to put up a sign or warning, and that said failure to put up a sign or warning was negligence, if you find there was such negligence, and that as a direct result of such negligence, if any, plaintiff was injured in a collision with said street car, then your verdict must be for the plaintiff and against the defendant."

We think the evidence affirmatively shows that neither the plaintiff, nor her brother, knew that there had been a watchman or flagman at the crossing at any other time. We think there could be no reliance upon the custom of having a watchman or flagman by one not familiar with such custom. [Montgomery v. Pac. R. Co., 181 Mo. 477; Ernest v. Hudson River R. Co., 39 N. Y. 61.]

This brings us to a consideration of Instruction No. 1 above set out. The situation is not free from difficulty. Instruction No. 1 complained of proceeds upon the theory applicable to steam railroads. [Welsch v. Hannibal & St. Joseph R. Co., 72 Mo. 451.] No Mis-

souri cases seem to be in point. The case of Eckingon and Soldier's Home R. Co. v. Hunter, 6 App. Cas. (D. C.) 287, is cited, and in that case a distinction is drawn between steam railroads and street railroads. The court in Eckingon & Soldier's Home R. Co. v. Hunter, supra, l. c. 313, said:

"But extraordinary precautions, such as keeping flagmen at every, or at any particular crossing, are not to be imposed upon them at the option of a jury in a particular case. These must be left to the discretion and control of the law-making power, or of the municipal authorities charged thereby with the duty of making all reasonable police regulations looking to the public safety and welfare. When these act, the requirement is defined and becomes fixed and invariable; it must be taken notice of and observed by all, the public and the railway companies alike, and the conduct of all may be governed by the reasonable expectation of its observance.

"The general charge was sufficiently explicit in defining the care and the precautions which the defendant was bound to exercise, and the evidence was such as to require the question of the negligence of the defendant and the contributory negligence of the plaintiff to be submitted to the determination of the jury."

After diligent search we have been able to find but one other case bearing directly upon that question. The case is M'Cherry v. Snare & Triest Co. et al., 114 N. Y. Supp. 674. The court in discussing the question as to the duty of a street railway to have a flagman, l. c. 678 said:

. "With the main charge standing without exception as above quoted, counsel for the railroad company asked the court to charge the jury:

" 'That there was no duty on the defendant the Brooklyn Heights Railroad Company to have a flagman at any place on the bridge, as far as the evidence in this case goes.'

"To this the court replied: 'There is no duty on the defendant the Brooklyn Heights Railroad Company to do anything except exercise a high degree of care in the conduct of their business for the benefit of their passengers. It is for the jury to say what constitutes the high degree of care that should have been exercised at that particular place and at that particular moment and under those circumstances.'

"There was no exception taken to this modification of the defendant's request, and then counsel made a request to charge: 'That in view of the statement of Fay that no notice had been given that he intended to do anything that would in any way obstruct the use of the railroad company cars, it was not our duty to have any flagman there, out where they said a flagman sometimes was.' .

"To this the court responded: 'I charge the jury that it is their duty to take that fact into consideration, when they came to determine whether a flagman, or any other man or men, should have been there.' "

". . . The defendant was not entitled to a charge that it owned no duty to have a flagman. It was the province of the jury, not to determine whether it was or was not the duty of the defendant to have a flagman at any particular place, but whether, under all the circumstances, including the presence or absence of a flagman, the defendant had discharged the duty of exercising that high degree of care which it is called upon to exercise in the case of a passenger. If there was no flagman present, and if the defendant exercised a high degree of care in operating its train, then the fact that the flagman was not there was of no consequence. If, on the other hand, the train was not operated with a high degree of care, the jury might properly conclude, under the circumstances, that the presence of a flagman was necessary to the exercise of the proper degree of care. In other words, the law does not compel the railroad to have a flagman at any point, in the absence of statutory requirements or ordinances of municipalities; but always, in determining the question of negligence in the operation of trains at dangerous points, it is important to know, in connection with other facts, whether the railroad company had a flagman there, and this court clearly indicated to the jury. It was not error, therefore, to refuse to charge the defendant's request."

While it is true in M'Cherry v. Snare & Triest Co., supra, the plaintiff was a passenger, still, we think, that the case is in point in principle, having in mind, of course, the different degree of care required.

It will be noticed that the last-cited case recognizes the distinction between steam and street railroads, and holds that in the absence of municipal or statutory requirement the absence of a flagman is not a proper issue for the court to submit for a specific finding.

We think the principle announced in the cases above cited applies equally to the requirement as to signs or other similar warnings, and it is a question after all of reasonable care.

In our view of the case, and as the question of the sounding of the gong was not submitted to the jury, the effect of this evidence is not important.

The judgment is reversed and the cause remanded. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.